IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

EUGENE STOKES, JR. and                                    PLAINTIFFS
JEWEL A. STOKES

V.                                              NO. 4:25-CV-60-DMB-DAS

ALLSTATE VEHICLE AND
PROPERTY INSURANCE
COMPANY, JOHN DOE 1,
JOHN DOE 2, and JOHN DOE 3                                 DEFENDANTS

## OPINION AND ORDER

Eugene and Jewel Stokes claim that Allstate Vehicle and Property Insurance Company unreasonably delayed or denied insurance payments for water damage to their home. Allstate moves to dismiss only the Stokes' extracontractual claims for failure to state a claim. Because the Stokes withdrew their breach of fiduciary duty claim and because they fail to sufficiently state any claim for extracontractual damages, the motion to dismiss will be granted in part.

## I
## Procedural History

On April 3, 2025, Eugene Stokes, Jr., and Jewel A. Stokes filed a complaint in the Circuit Court of Coahoma County, Mississippi, against Allstate Vehicle and Property Insurance Company, John Doe 1, John Doe 2, and John Doe 3.[1] Doc. #2. In the complaint, the Stokes assert claims for "breach of contract, breach of fiduciary duty, bad faith, negligence and/or gross negligence, and negligence [sic] and/or intentional infliction of emotional distress" based on allegations that Allstate, without legitimate or arguable basis, delayed or denied payments under their policy for

---

[1] According to the complaint, John Does 1, 2, and 3 "are named as Defendants herein in the event that the Plaintiffs have misnamed the Defendant alleged to be responsible under the cause of actions herein and/or other Defendants who may be liable to Plaintiffs for the cause of actions alleged herein whose names are unknown to the Plaintiffs at the time of filing of this Complaint." Doc. #2 at 2.

dwelling protection and additional living expenses following water damage to their home caused by burst plumbing pipes. *Id.* at 2, 5. The Stokes "seek actual and compensatory damages from [Allstate] in the amount of $2,250,000.00 plus punitive damages." *Id.* at 5.

Asserting diversity jurisdiction, Allstate removed the case to the United States District Court for the Northern District of Mississippi on May 15, 2025. Doc. #1. Seven days later, pursuant to Federal Rule of Civil Procedure 12(b)(6), Allstate filed a motion to dismiss only the Stokes' claims for extracontractual damages.[2] Doc. #3 at 1. The motion is fully briefed. Docs. #9, #13,[3] #14.

## II
## Standard

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) asserts a "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted). In evaluating a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). The Court "accept[s] all well-pleaded

---

[2] Later that day, Allstate filed an answer to the complaint. Doc. #5.

[3] The Stokes filed a response to the motion on June 4, 2025. Doc. #9. Because the document they docketed as their memorandum brief, Doc #10, was the same document they docketed as their response, Doc. #9, the Clerk of the Court instructed them to file the correct document. The Stokes did not file the correct document as their memorandum until July 18, 2025. Doc. #13. Allstate timely replied. Doc. #14.

facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)).

### III
### Factual Allegations

 Eugene Stokes, Jr., and Jewel A. Stokes are the owners of real property located at 2133 Cardinal Lane in Clarksdale, Mississippi. Doc. #2 at 2. On or about January 8, 2024, their home was subjected to interior and exterior flooding as a result of plumbing pipes freezing and bursting throughout the home's interior and exterior. *Id.* As a result of the water damage, the home became uninhabitable. *Id.*

 Prior to January 8, 2024, the Stokes purchased homeowners' insurance on their home from Allstate Vehicle and Property Insurance Company. *Id.* The policy provides dwelling protection coverage up to $246,839.00 and additional living expenses coverage up to $49,368.00. *Id.* at 3; *id.* at PageID 80. The Stokes filed a claim with Allstate under the policy for the loss to their home, and cooperated with Allstate in every respect regarding the investigation of their claim. *Id.* at 3. Allstate caused several inspections of the dwelling damage to be performed over a period of ninety days following the loss. *Id.*

 Allstate did not provide the Stokes with additional living expenses of $49,368.00. *Id.* Allstate paid for the Stokes to stay at local hotel(s) from approximately March 1 – June 28, 2024. *Id.* at 4. Allstate did not pay the hotel charges in a timely manner, leading to the Stokes being locked out of the hotel room on several occasions, and eventually evicted from the hotel. *Id.* Allstate did not communicate with the Stokes and others regarding payments owed to the hotel.

3

*Id.* At the time, the Stokes were significantly ill. *Id.* at 5. They lived in a church without a bed, bathtub, shower, or any other living essentials, and suffered many sleepless and restless nights. *Id.* The Stokes have undergone and continue to undergo medical and psychological treatment. *Id.*

### IV
### Analysis

In its motion to dismiss, Allstate submits that "[b]ecause the [Stokes'] complaint does not plead sufficient facts to support any of the extracontractual claims …, all the claims other than the breach of contract claims should be dismissed." Doc. #3 at 1.

In their response, the Stokes maintain that Allstate's motion to dismiss should be denied because "[their] Complaint alleged facts that support plausible claims for bad faith and punitive damage, negligent and intentional infliction of emotional distress, negligence and gross negligence." Doc. #9 at PageID 226 (emphasis omitted). Alternatively, "[they] request that, in the event their complaint is found to be deficient as to their claims of bad faith and negligent infliction of emotional distress, … that they be allowed 14 days to amend their complaint." *Id.* at PageID 227 (citing *Deloach v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:18-cv-141, 2019 WL 1440298 (N.D. Miss. Mar. 29, 2019)).

### A. Breach of Fiduciary Duty

Allstate contends the Stokes fail to state a breach of fiduciary duty claim against it because "there is no fiduciary relationship between [it] (the insurer) and the [Stokes] (the insureds) … as a matter of law." Doc. #4 at 6 (citations omitted). The Stokes respond that they "withdraw the claim for breach of fiduciary duty." Doc. #13 at 2. Because the Stokes withdrew their breach of fiduciary duty claim, the motion to dismiss is moot in that respect and will be denied as such.[4]

---

[4] In its reply, Allstate urges that "dismissal [of this withdrawn claim] should be with prejudice since the defect in this claim—that Mississippi law does not impose a fiduciary duty on an insurance carrier—cannot be cured by

4

### B. Negligence

Allstate argues that "[t]o the extent that the [Stokes] intended to assert a claim for simple negligence, the Complaint does not include a single factual allegation to distinguish a claim of negligence from the claim for breach of contract;" and "[a]s in *Baker* [*v. Allstate Indemnity Company*], the [Stokes] has [sic] not pleaded facts that could prove that [it] breached any duty to her [sic] 'independent of the contract.'" Doc. #4 at 9–10 (citing No. 1:23-cv-57, 2024 WL 1200433, at *3 (N.D. Miss. Mar. 20, 2024)).

The Stokes respond that "[i]n Mississippi, insurance companies are legally obligated to handle claims in good faith;" "[w]hen an insurer unreasonably delays payment on a valid homeowners insurance claim, it may be liable for negligence, gross negligence, or bad faith;"[5] and "[their] Complaint alleges that [Allstate] caused an unreasonable delay in the payment of additional living expenses under their homeowners policy." Doc. #13 at 7.

Allstate replies that "[t]he [Stokes'] response has not demonstrated that they pleaded a claim for simple negligence upon which relief can be granted;" "the [Stokes] did not plead facts that could prove that [it] breached any duty to them independent of the contract;" and "[t]he [Stokes] did not cite any authority or advance any meaningful argument to support their claim of simple negligence." Doc. #14 at 4–5.

Under Mississippi law,[6] "[t]he elements of a negligence claim are duty, breach of duty,

---

amendment." Doc. #14 at 2 (citations omitted). Since the claim is withdrawn, the Court need not decide if dismissal would or would not have been with prejudice.

[5] The Stokes do not cite case law to support these assertions.

[6] The policy provides that "the laws of the state in which the resident premises is located shall govern any and all claims or disputes in any way related to this policy," Doc. #2 at PageID 106 (emphasis omitted), which here, is Mississippi since the Stokes' home is in Mississippi. Even if there was no policy provision specifying what law governs, Mississippi substantive law would apply since Allstate removed this case based on diversity jurisdiction. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) ("*Erie* requires that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims.").

proximate cause, and damages." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1162 (Miss. 2010). The Stokes allege Allstate breached a duty by failing to pay insurance proceeds within a reasonable time. However, this is the same factual basis the Stokes use for their breach of contract claim. As Allstate correctly notes, "breach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law. There must be a duty of care 'fixed by law and independent of the contract.'" *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015) (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 624 (Miss. 1964)). And while "an insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts … [a]nd, if the insurance company cannot give its insured a valid reason for denying the claim, it has a final duty to promptly honor it," such duty arises from the contract itself, not tort law. *Bankers Life & Cas. Co. v. Crenshaw*, 483 So. 2d 254, 276 (Miss. 1985). Because the Stokes fail to adequately plead the duty element of their negligence claim, the negligence claim will be dismissed.

## C. Gross Negligence

Allstate argues that "under Mississippi law, [a]n approximate definition of gross negligence is that course of conduct which under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them;" and "[t]here are no factual allegations in the Complaint that [it] engaged in such conduct." Doc. #4 at 10 (quoting *Ezell v. Bellsouth Telecomms., Inc.*, 961 F. Supp. 149, 152 (S.D. Miss. 1997)) (cleaned up). In response, the Stokes make the same arguments as they did with their negligence claim. Doc. #13 at 7–8. Allstate replies that "the [Stokes'] Complaint … fails to allege facts that give rise to a cognizable claim of gross negligence;" "[t]he arguments that [it] 'did not timely obtain inspections,' caused 'unreasonable delay,' and 'failed to pay the hotel charges in a timely manner'

6

are mere conclusions;" "[t]here are no facts alleged to support the conclusion that [it] unreasonably delayed or made payments untimely;" "[f]or the most part, the Complaint does not even identify what type of payments were allegedly delayed;" "the allegation that [it] played a role in inspections being 'performed over a period of 90 days following the … loss' does not include facts regarding what these alleged inspections consisted of, who instigated the inspections, or why inspections over a period of 90 days was improper;" "[the Stokes] do not show that [it] acted with 'reckless indifference to consequences without the exertion of any substantial effort to avoid them;'" and "[t]he [Stokes'] Complaint states a claim for nothing more than a breach of contract." Doc. #14 at 5–6.

For the same reasons the Court concluded above that the Stokes' complaint fails to state a negligence claim against Allstate, the gross negligence claim fails too. *See Hollinshed v. Yazoo & M.V.R. Co.*, 55 So. 40, 40 (Miss. 1911) ("An allegation of gross negligence includes negligence. The greater includes the less. Both are negligence. They only differ in degree."); *Blue Hill Specialty Ins. Co. v. Robertson*, No. 3:24-cv-747, 2025 WL 1638516, at *1 (S.D. Miss. June 9, 2025) (quoting *Hollinshed*, 55 So. at 40).[7] The gross negligence claim will be dismissed.

### D. Emotional Distress

Allstate argues that "[the Stokes'] claims for negligent and/or intentional infliction of

---

[7] Regardless, "[g]ross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Dame v. Estes*, 101 So. 2d 644, 645 (Miss. 1958). It is the plaintiff's burden to show the defendant "acted willfully, wantonly, or with reckless disregard of the consequences to the plaintiff." *Cook v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:24-cv-148, 2024 WL 4594233, at *3 (N.D. Miss. Oct. 28, 2024) (quoting *McDonald v. Lemon-Mohler Ins. Agency, LLC*, 183 So. 3d 118, 127 (Miss. Ct. App. 2015)). Here, the Stokes allege Allstate unreasonably delayed payment, conducted an inadequate and delayed investigation, caused numerous unnecessary inspections of the dwelling damage, and failed to timely pay their hotel charges. Doc. #2 at 3, 4. But beyond their conclusory allegations that Allstate caused extra inspections to be performed for the "purpose of seeking to lower the repair estimates so as to prevent making [them] whole for the dwelling damage," *id.* at 3, and that Allstate's conduct "was willful, wanton, intentional, [and] reckless in disregard of [their] rights," *id.* at 5, there are no factual allegations in the complaint to create a reasonable inference that Allstate acted willfully, wantonly, or with reckless disregard of the consequences to the Stokes.

emotional distress must be dismissed because [they] did not either plead a claim for bad faith or plead evidence of a specific physical manifestation of injury;" "the Complaint only includes insufficient, conclusory allegations that [it] lacked an arguable basis for the way it handled this claim;" and "the [Stokes'] claim of negligent infliction of emotional distress should be dismissed for the separate, independent reason that [the Stokes] did not plead any demonstrable physical or mental injury." Doc. #4 at 10–12.

The Stokes respond that "[they] alleged facts which support a claim for negligent infliction of emotional distress;"[8] "[they] were also required to undergo medical and psychological treatment for their physical and mental distress and therefore there exist 'some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental;'" and "the tort of negligent infliction of emotional distress is sufficient to plead and state a 'plausible claim of relief' under both MRCP 8 & FRCP 8." Doc. #13 at 5–6 (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (Miss. 2001)). The Stokes also argue that "[they] have alleged facts that [Allstate's] 'conduct [was] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[9] *Id.* at 6 (quoting *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004)).

---

[8] Specifically, the Stokes allege in their complaint that "[Allstate] had full knowledge that [their] home was uninhabitable, and that [they] had not exhausted the Additional Living Expenses allowance;" "[Allstate] did not return phone calls or reply to emails or other communications from [them], the hotel, [or the] Additional Living Expense Adjuster;" "[a]t the time of [Allstate's] conduct … [they] were significantly ill" and "evicted from the hotel caus[ing them] to live in a church without a bed or bathtub or shower or any other living essentials;" and "[Allstate's] conduct … caused [them] to suffer may [sic] sleepless and restless night and exacerbated their existing medical conditions … to the point that they have been required to undergo and continue to undergo medical and psychological treatment for their physical and mental distress." Doc. #13 at 5–6 (emphases omitted).

[9] While this argument is in a section titled, "The Complaint State[s] a 'Plausible Claim for Relief' for the Tort of Negligent Infliction of Emotional Distress," the Stokes seem to argue that the complaint sufficiently alleges intentional infliction of emotional distress. Doc. #13 at 5–6. The Stokes do not include a section in their response that specifically addresses Allstate's contention that they fail to state a claim for intentional infliction of emotional distress. *See generally* Doc. #13.

Allstate replies that "[its] conduct … as alleged in the [Stokes'] Complaint does not support [a] claim for bad faith that could support a claim for emotional distress damages;" "[a]bsent bad faith on [its] part …, the [Stokes] would have to show 'physical manifestation of injury or demonstrable harm' that was reasonably foreseeable to [it];" "[t]he [Stokes] admitted in their Complaint that they had preexisting medical conductions [sic] at the time they made their insurance claim;" "they merely alleged sleeplessness and worsening of their preexisting conditions … [which] they alleged … was specifically the result of [it] not pre-paying additional living expenses;" "allegations like this are not sufficient for a claim for emotional distress under Mississippi law;" and "[it] had no contractual obligation to prepay [additional living expenses] under the policy."  Doc. #14 at 6 (quoting *Randolph v. Lambert*, 926 So. 2d 941, 946 (Miss. Ct. App. 2006)).

### 1.   Negligent infliction of emotional distress

"Under Mississippi law, a claim for negligent infliction of emotional distress requires allegations supporting a claim for general negligence in addition to allegations of 'some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.'"  *Cirino v. Bank of Am., N.A.*, No. 1:14-cv-240, 2015 WL 5752105, at *7 (S.D. Miss. Aug. 26, 2015) (quoting *Am. Bankers' Ins. Co. of Fla.*, 819 So. 2d at 1208).

The Court explained above why the Stokes fail to sufficiently allege general negligence. And the Stokes' allegations that they were significantly ill when Allstate was investigating their claim, that their existing medical conditions were exacerbated by such distress, and that such distress caused them to undergo medical and psychological treatment, lack specific factual support. Consequently, the Stokes fail to adequately allege a negligent infliction of emotional distress

claim. *See Alston v. Miss. Dep't of Emp. Sec.*, 300 So. 3d 543, 549 (Miss. Ct. App. 2020) (negligent infliction of emotional distress claim was properly dismissed because "[w]hile [plaintiff] claimed that he received treatment at [specific medical centers] as a result of [defendant's] conduct, there were no facts or evidence presented that link [plaintiff's] treatment to any wrongdoings of [defendant]."); *Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 772 (S.D. Miss. 2008) (plaintiff's depression was insufficient to sustain a claim for negligent infliction of emotional distress); *Cirino*, 2015 WL 5752105, at *7 ("Plaintiff's lone allegation that he 'suffered undue emotional distress, anxiety, and mental anguish' similarly does not sufficiently allege facts indicating that Plaintiff suffered an injury giving rise to a claim for negligent infliction of emotional distress.").

## 2. Intentional infliction of emotional distress

> Under Mississippi law, a plaintiff may recover under a theory of intentional infliction of emotional distress "where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally … even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress …." In other words, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Accordingly, the plaintiff[] must have alleged that the conduct that caused their emotional distress was "so outrageous in character, and so extreme in degree," that they might recover under a theory of intentional infliction of emotional distress and survive a motion to dismiss.

*Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (internal citations omitted); *see King v. Newton Cnty. Bd. of Supervisors*, 144 F. App'x 381, 385 (5th Cir. 2005) (per curiam) ("Under Mississippi law, to create liability for intentional infliction of emotional distress, the complained-of conduct 'must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (citation omitted).

10

Here, there are no alleged facts which rise to the level of extremity and outrageousness required to sustain a claim of intentional infliction of emotional distress under Mississippi law. Though the Stokes allege Allstate's conduct exacerbated their existing medical conditions to a level that required professional intervention, there is nothing in the complaint to support the conclusion that Allstate acted intentionally in doing so or in such a way that would be intolerable in a civilized community. *See Jones v. Tyson Foods, Inc.*, 971 F. Supp. 2d 632, 642–43 (N.D. Miss. 2013) ("Conduct that rises to the level of 'nervewracking, upsetting, and even improper' is not enough to reach the level of extreme and outrageous conduct required for recovery for intentional infliction of emotional distress.") (quoting *Jenkins v. City of Grenada*, 813 F. Supp 443, 447 (N.D. Miss. 1993)). This claim is properly dismissed.

### E. Bad Faith

As to the Stokes' bad faith claim, Allstate argues:

> The Complaint's allegations of bad faith are nothing more than conclusory assertions because the [Stokes] include few actual allegations that indicate any actions other than those underpinning the breach of contract claim. The Complaint sprinkles in terms like "bad faith," "without a legitimate or arguable basis," "unduly and unreasonably delayed," and "inadequate and delayed investigation" in an attempt to state a claim of bad faith. These are all hollow descriptors that do not meaningfully differentiate the claim from the same breach of contract alleged in the Complaint. The plaintiffs' conclusory allegations do not satisfy the pleading requirements of *Iqbal*, and … should not be accepted as true.
>
> …
>
> … The [Stokes] … allege no facts to make it plausible that [it] lacked an arguable basis relating to any decisions made with respect to [their] insurance claim.

Doc. #4 at 7, 8.

The Stokes respond that "[they] alleged facts which support a claim of bad faith;" "[u]nlike *Iqbal*, [they] did more than recite the elements of the claim of bad faith, but rather specifically outlined the conduct of [Allstate] that establishes bad faith;" and "[u]nlike[] Hibbets v. Lexington

Ins. Co., 377 F. App'x 352, 355–56 (5th Cir. 2010), relied on by [Allstate], [their] complaint does not just make conclusory allegations of bad faith … but … make[s] factual allegations of bad faith."[10]  Doc. #13 at 2, 4 (emphases omitted).

Allstate replies that the Stokes fail to describe malicious conduct: it "had a right to inspect the premises," "there is no allegation that the inspections were 'malicious,'" and "allegations of delay [of inspections] are conclusory;" "there are no factual allegations to support the conclusion that there was malicious or wrongful conduct relating to [additional living expenses] coverage" and "[b]ecause [it] had no contractual obligation to pay [additional living expenses] upfront, [it] cannot … have acted in bad faith" by failing to do so; and "[there] are not factual allegations that can show that [its alleged failure to return phone calls or respond to emails] rose to the level of egregiousness required to support a claim of bad faith." Doc. #14 at 3–4.

"Under Mississippi law, insurers have a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation.'" *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627–28 (5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)).  If the insurer breaches this duty, it may be subject to liability for bad faith.  *Id.*  But "[i]n order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Est. of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459, 464 (Miss. 2021) (quoting *McKneely*, 862 So. 2d at 533).

Here, the Stokes allege that Allstate, without a legitimate or arguable basis, unduly and

---

[10] Specifically, the Stokes alleged in their complaint that Allstate did not timely inspect their home's damage, caused several inspections to be completed over a period of ninety days, did not provide them with the full amount of additional living expenses though their house was uninhabitable, failed to timely pay their hotel charges, and failed to communicate with them, the hotel, and the additional living expenses adjuster.  Doc. #13 at 2–3 (emphases omitted).

unreasonably delayed payment for the loss of the dwelling and additional living expenses; did not timely obtain inspections of their dwelling damage; further unreasonably delayed payment by causing several inspections of the dwelling damage that were performed over a period of 90 days after the loss; caused numerous unnecessary inspections of the dwelling damage to be performed for its purpose of seeking to lower the repair estimates so as to prevent making them whole; failed to pay the hotel charges in a timely manner; and failed to adequately communicate with them and the additional living expenses adjuster. However, the complaint does not allege any facts to support these conclusory assertions. The complaint does not mention the alleged reason Allstate denied paying the Stokes more[11] or why the amounts they were paid constitute bad faith. *Cf. Williams v. Allstate Indem. Co.*, No. 4:22-cv-79, 2022 WL 17254306, at *3 (N.D. Miss. Nov. 28, 2022) (plaintiff adequately alleged bad faith claim where complaint alleged insurer denied coverage based on property being vacant despite plaintiff providing evidence it was not). In the absence of such, the bad faith claim will be dismissed.

## F. Punitive Damages

Allstate argues that the Court should not award punitive damages because "there was no denial of coverage in the case at bar;" "the [Stokes] did not adequately plead a claim of bad faith;" and "there is no other basis for an award of punitive damages." Doc. #4 at 12. The Stokes respond that "[b]ecause [their] Complaint states a claim for bad faith it follows that it also states a claim for punitive damages." Doc. #13 at 5. Allstate replies that "[s]ince the [Stokes] did not plead any plausible claim for relief other than simple breach of contract, there is no other basis for an award of punitive damages." Doc. #14 at 7.

If an insurer does not "'perform a prompt and adequate investigation and make a

---

[11] The Stokes allege that Allstate "deni[ed] and/or delay[ed]" their payment. Doc. #2 at 5. Allstate claims that it "did not deny the [Stokes'] claim." Doc. #14 at 7.

reasonable, good faith decision based on that investigation' … [it] may be liable for punitive damages for denying a claim in bad faith." *Broussard*, 523 F.3d at 627–28 (quoting *McKneely*, 862 So.2d at 535). Punitive damages may only be awarded if the insurer "acted with actual malice, gross negligence, which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65.

For the reasons explained above, this Court finds the complaint does not adequately plead a bad faith claim. Likewise, there are no alleged facts which, even if taken as true, show that Allstate acted willfully or maliciously. Given this, there is no basis for punitive damages. *See State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985) ("Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie.") (quoting *Standard Life Ins. Co. of Ind. v. Veal*, 354 So. 2d 239, 248 (Miss. 1977)).

## G. Opportunity to Amend

In their response to the motion to dismiss, the Stokes ask that "in the event their complaint is found to be deficient as to their claims of bad faith and negligent infliction of emotional distress, … that they be allowed 14 days to amend their complaint." Doc. #9 at PageID 227. To the extent the Stokes seek to amend their complaint, they must seek such relief through a motion—not through their response, *see* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."), and a proposed amended complaint must accompany the request, *see* L.U. Civ. R. 15 ("[A] proposed amended pleading must be an exhibit to a motion for leave to file the pleading."). However, "[w]hile a court can dismiss a deficient pleading, it should provide '*at least* one opportunity to cure pleading deficiencies before dismissing a case.'" *Dierlam v. Trump*, 977 F.3d

14

471, 478 n.44 (5th Cir. 2020) (emphasis in original) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  The Court will allow the Stokes such an opportunity as to their extracontractual claims—except the withdrawn breach of fiduciary duty claim—since it is clear they are willing to amend their complaint to avoid the dismissal of these claims.

## V
## Conclusion

The Stokes' breach of fiduciary duty claim is **WITHDRAWN**.  Allstate's "Motion to Dismiss Certain Counts in the Plaintiffs' Complaint" [3] is **GRANTED in Part and DENIED in Part**.  The motion is GRANTED as to all extracontractual claims not withdrawn by the Stokes. The motion is DENIED as moot in all other respects.  No later than February 23, 2026, the Stokes may seek leave to amend their complaint as to their extracontractual claims except the withdrawn breach of fiduciary duty claim.

**SO ORDERED**, this 9th day of February, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

15