**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**EUGENE STOKES, JR. and**
**JEWEL A. STOKES** **PLAINTIFFS**

**V.** **NO. 4:25-CV-60-DMB-DAS**

**ALLSTATE VEHICLE AND**
**PROPERTY INSURANCE**
**COMPANY, JOHN DOE 1,**
**JOHN DOE 2, and JOHN DOE 3** **DEFENDANTS**

**ORDER**

After this Court granted Allstate Vehicle and Property Insurance Company's motion to dismiss Eugene and Jewel Stokes' extracontractual claims, the Stokes now seek leave to file an amended complaint. Because the amendments the Stokes propose would be futile, leave to amend will be denied.

**I**
**Procedural History**

On April 3, 2025, Eugene Stokes, Jr., and Jewel A. Stokes filed a complaint in the Circuit Court of Coahoma County, Mississippi, against Allstate Vehicle and Property Insurance Company, alleging that Allstate delayed resolving their insurance claim for damage to their home resulting from a burst pipe and denied them additional living expenses ("ALE") without a legitimate or arguable basis. Doc. #2. Asserting diversity jurisdiction, Allstate removed the case to the United States District Court for the Northern District of Mississippi on May 15, 2025. Doc. #1. On Allstate's motion, the Court dismissed all extracontractual claims on February 9, 2026—except the withdrawn breach of fiduciary claim—specifying that "the Stokes may seek leave to amend their complaint as to their extracontractual claims except the withdrawn breach of fiduciary duty

claim." Doc. #32 at 15.

On February 24, the Stokes filed a motion for leave to amend their complaint, attaching a proposed amended complaint as an exhibit.[1] Docs. #38, #38-1. Allstate responded in opposition on March 20, 2026.[2] Doc. #46. The Stokes replied on March 31, 2026.[3] Doc. #51.

## II
## Standards

### A. Rule 15

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave" to amend a pleading "when justice so requires." However, "[t]he district court may refuse to grant leave to amend when doing so would be futile." *Campbell v. Harrison Cnty. Cir. Ct.*, No. 25-60328, 2026 WL 1587521, at *2 (5th Cir. June 3, 2026) (per curiam) (citing *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022)). "[W]hen denial is based on the futility of the amendment, [courts] 'apply the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Ariyan*, 29 F.4th at 229 (quoting *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir. 2000)).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive scrutiny under Rule 12(b)(6), "a

---

[1] The Stokes initially filed a motion to amend on February 23—the deadline set by the Court. Doc. #37; Doc. #32 at 15. But the Clerk of the Court instructed them to refile it because they did not attach their proposed amended complaint as an exhibit to their motion as required by Local Rule 15.

[2] The Court granted Allstate's request to extend its response deadline to March 19. Doc. #42. Allstate initially filed its response on March 19, Doc. #45, but the Clerk of the Court directed Allstate to refile it because Allstate attached its memorandum brief to its response in violation of Local Rule 7(b)(2).

[3] The Stokes' reply is untimely because their initial March 30 reply was filed after the March 27 reply deadline. Doc. #48; *see* L.U. Civ. R. 7(b)(4) (setting fourteen-day response period). Though the Clerk of the Court instructed them to refile their March 30 reply because they did not file their exhibits with it, that instruction did not transform their untimely reply into a timely one. However, in the interest of deciding the motion to amend on the merits, the Court will consider the reply.

complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (internal citation omitted).

In evaluating a complaint under Rule 12(b)(6), "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (per curiam) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). The Court "accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). But the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *In re Great Lakes*, 624 F.3d at 210).

## III
## Analysis

The Stokes submit that their proposed amended complaint "cures the pleading deficiencies identified in the dismissal order." Doc. #38 at 1. Allstate responds that filing the proposed amended complaint "would be futile." Doc. #46 at 2. The Stokes reply that the proposed amended complaint's "detailed factual allegations go far beyond … conclusory pleading … and render [Allstate]'s argument that amendment would be futile incorrect." Doc. #51 at 2.

The proposed amended complaint contains seven counts: "Count I – Negligence (Independent Tort Duties: Negligent Misrepresentation);" "Count II – Gross Negligence;" "Count III – Negligent Infliction of Emotional Distress;" "Count IV – Intentional Infliction of Emotional

Distress;" "Count V – Bad Faith (Extracontractual);" "Count VI – Punitive Damages (Miss. Code Ann. § 11-1-65);" and "Count VII – Breach of Contract." Doc. #38-1 at PageID 524–28. Because the Court agrees with the parties that no amendment is necessary for the breach of contract claim,[4] the Court limits its analysis to the proposed amended complaint's extracontractual claims.[5]

**A. Proposed Claim Exceeding Scope of Court Order**

The proposed amended complaint asserts a claim for negligent misrepresentation[6] premised on allegations that "[o]n June 21, 2024, [Allstate] told [the Stokes] by email they had only 'approximately $6,000' remaining in ALE;" "[t]hat statement was false or misleading because [Allstate]'s own ledger reflected [the Stokes] had used only about $22,240.11, leaving about $27,127.89 remaining as of June 21, 2024;" "[the Stokes] disputed [Allstate]'s $6,000 representation and requested an accounting on or about June 21, 2024[, but Allstate] did not provide the requested accounting;" and "[the Stokes] made phone calls to [Allstate]'s ALE

---

[4] *See* Doc. #47 at 11 (Allstate's argument that "[s]ince there is a breach of contract claim currently pending, no amendment is necessary for that claim"); Doc. #52 at 21 (Stokes "agree[ment] with [Allstate]" as to breach of contract claim).

[5] In reviewing the extracontractual claims, the Court employs Mississippi law because the Stokes' policy with Allstate provides that "the laws of the state in which the residence premises is located shall govern any and all claims or disputes in any way related to this policy," Doc. #38-1 at PageID 562 (emphasis omitted), which here, is Mississippi since the Stokes' home is in Mississippi. If there was no policy provision specifying what law governs, Mississippi substantive law would apply since Allstate removed this case based on diversity jurisdiction. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991) ("*Erie* requires that federal courts apply substantive state law when adjudicating diversity-jurisdiction claims.").

Generally, Mississippi law dictates that neither extra-contractual nor punitive damages related to a breach of contract may be awarded in the absence of an independent tort. *See Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992) (addressing extra-contractual damages); *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 543 (Miss. 1996) (addressing punitive damages). For extra-contractual claims, Mississippi law requires more than mere breach of contract. *See Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 623 (Miss. 1964) ("[A] tort is distinguished from a breach of contract in that the latter arises under an agreement of the parties, whereas the tort, ordinarily, is a violation of a duty fixed by law, independent of contract or the will of the parties, although it may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action."); *accord Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015).

[6] Allstate argues that "[i]t is unclear if the [Stokes] are attempting to re-plead a simple negligence claim or just add a negligent misrepresentation claim." Doc. #47 at 5. Though the Court agrees that the proposed amended complaint is unclear in that way, the Court construes proposed Count I as a negligent misrepresentation claim since the Stokes' reply asserts that they made a legally sufficient claim for negligent misrepresentation. Doc. #52 at 10.

adjuster/administrator nearly every day between June 21, 2024 and July 25, 2024 to discuss ALE usage and prevent eviction[ but the] calls were not returned and communications were not timely answered." Doc. #38-1 at PageID 519–20.

Allstate argues that the proposed negligent misrepresentation claim "is beyond the scope of the court's order allowing [the Stokes] to 'seek leave to amend their complaint as to their extracontractual claims.'"[7] Doc. #47 at 6 (quoting Doc. #32 at 15).

The Stokes reply that "the [proposed] amended complaint does not exceed the Court's order permitting amendment" because "the negligent misrepresentation theory arises from the same conduct alleged in the original complaint;" "the proposed amended complaint merely adds factual detail and clarifies the legal theory, which is exactly what the Court invited [them] to do;" "FRCP 15 permits clarification of legal theories arising from the same facts;" "[f]ederal courts consistently hold that an amended complaint may clarify or refine legal theories so long as the amendment arises from the same operative facts;" and "[t]he Fifth Circuit has held that amendments are proper where they merely 'restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct.'"[8] Doc. #52 at 10–11.

The original complaint asserted a negligence claim based on allegations that Allstate did not provide the full $49,368 ALE amount; Allstate only paid for the Stokes to stay in a hotel for a short time despite their home remaining uninhabitable and available ALE; Allstate's failure to

[7] Allstate also argues that "[a] claim of negligent misrepresentation does not 'fit' the facts as alleged" because "[t]he [Stokes] would allege in the proposed amended complaint that [it] misrepresented information about the ALE benefits owed and paid;" "[t]hey do not, however, allege that [they] reasonably relied on these representations to their detriment;" "[t]he allegations that [it] did not pay ALEs owed, or paid ALEs to vendors improperly, that is the substance of the breach of contract claim;" and "[t]hese allegations do not give rise to a breach of duty 'fixed by law and independent of the contract.'" Doc. #47 at 6–7 (quoting *Clausell*, 158 So. 3d at 391).

[8] Though the Stokes attribute this quote to the Fifth Circuit's ruling in *Thomas v. Chevron U.S.A., Inc.*, the *Thomas* opinion does not include that specific statement. *See generally* 832 F.3d 586, 590–91 (5th Cir. 2016). The statement seems to come from a Third Circuit case, *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). Third Circuit rulings do not bind this Court.

disperse additional ALE caused the Stokes to be locked out of their hotel room and eventually evicted from the hotel; and Allstate did not return phone calls or reply to emails from the Stokes regarding their hotel charges. Doc. #2 at 3–4. Even interpreting these factual allegations broadly,[9] such conduct does not amount to a legal theory of negligent misrepresentation, as there is no allegation that Allstate made a misrepresentation to the Stokes. Since the negligent misrepresentation claim does not merely "clarify" the Stokes' previously alleged simple negligence claim, it exceeds the scope of the Court's February 9 order allowing the Stokes to seek leave to amend as to their extracontractual claims, and will not be permitted.[10]

**B. Gross Negligence**

In Mississippi, a claim of gross negligence requires that in addition to the usual negligence elements of duty, breach, causation, and damages, *Chaffee v. Jackson Pub. Sch. Dist.*, 270 So. 3d 905, 907 (Miss. 2019), there must be an "intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," *Doe v. Salvation Army*, 835 So. 2d 76, 77 (Miss. 2003). It is the plaintiff's burden to show the defendant "acted willfully, wantonly, or with reckless disregard of the consequences to the plaintiff." *Cook v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:24-cv-148, 2024 WL 4594233, at *3 (N.D. Miss. Oct. 28, 2024) (quoting *McDonald v. Lemon-Mohler Ins. Agency, LLC*, 183 So. 3d 118, 127 (Miss. Ct. App. 2015)).

---

[9] *See Thomas*, 832 F.3d at 592 (proposed amended claims need only be broadly supported by original complaint's factual allegations).

[10] Regardless, the Stokes' proposed amended negligent misrepresentation claim would be futile for failing to state a claim upon which relief can be granted. While they sufficiently articulate that Allstate made a misrepresentation—that approximately $6,000 of ALE remained as of June 21, 2024—they fail to allege that they reasonably relied on it. *Johnson & Johnson, Inc. v. Fortenberry*, 234 So. 3d 381, 394 (Miss. 2017) (elements of negligent misrepresentation include "that the plaintiff reasonably relied on the defendant's representations") (quoting *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002)). To the contrary, they allege they disputed the representation the same day it was made, requested an ALE accounting, and called Allstate nearly every day for almost a month to discuss ALE usage. Even if the Stokes relied on the representation, such reliance would not be reasonable because the policy provides for $49,368 in ALE, the full amount of which had not been used at the time of the alleged representation. *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007) ("Under Mississippi law, a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable.").

The proposed amended complaint alleges that, "despite documented knowledge of [the Stokes'] serious medical vulnerabilities and foreseeable risk of harm from housing instability, [Allstate] acted with reckless indifference … by … persisting in or failing to correct the false $6,000 ALE representation;" "allowing lockouts and eviction to occur while ALE coverage remained;" "failing to respond to urgent communications seeking to prevent eviction;" "paying substantial ALE sums after eviction to vendors/administrator without timely explanation, reconciliation, or benefit to [the Stokes];" and "failing to monitor whether 'housing' was actually provided while charging [the Stokes] ALE." Doc. #38-1 at PageID 525–26.

Allstate argues that "the proposed amended complaint does not state a claim for negligence [and i]t necessarily follows that the proposed amended complaint fails to state a claim for gross negligence;" "the allegations … do not show that [it] 'acted willfully, wantonly, or with reckless disregard for the consequences to the [Stokes];'" and "[t]he allegations that [it] acted with gross negligence are conclusory." Doc. #47 at 7 (quoting *Cook*, 2024 WL 4594233, at *3).

The Stokes reply that "[t]he [proposed] Amended Complaint alleges that [Allstate] owed duties independent of the insurance policy;" "Mississippi law recognizes tort liability where a party breaches duties independent of a contract, including negligent misrepresentation and negligent performance of voluntarily undertaken services;"[11] and "[t]he [proposed] Amended Complaint plausibly alleges both forms of independent duty." Doc. #52 at 13–14.

To the extent the proposed amended complaint's gross negligence claim stems from the same alleged facts as its impermissible negligent misrepresentation claim, the gross negligence claim fails. *See Hollinshed v. Yazoo & M.V.R. Co.*, 55 So. 40, 40 (Miss. 1911) ("An allegation of gross negligence includes negligence. The greater includes the less. Both are negligence. They

[11] The Stokes do not cite any law to support this assertion. *Id.* at 14.

only differ in degree."); *accord Blue Hill Specialty Ins. Co. v. Robertson*, No. 3:24-cv-747, 2025 WL 1638516, at *1 (S.D. Miss. June 9, 2025).

To the extent the Stokes offer factual allegations separate from those associated with the negligent misrepresentation claim, the proposed amended complaint still fails to sufficiently state a gross negligence claim. The Stokes specifically contend Allstate was grossly negligent by acting with reckless indifference in failing to prevent them from being locked out of their hotel; however, Allstate had no duty to prepay ALE to ensure the Stokes had housing.[12] The "Section I Additional Protection" portion of the Stokes' policy with Allstate covers ALE generally, stating:

> We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct loss we cover under Dwelling Protection-Coverage A, Other Structures Protection-Coverage B or Personal Property Protection-Coverage C makes your residence premises uninhabitable.

Doc. #38-1 at PageID 572 (emphases omitted). Additionally, the "Section I Conditions" portion of the policy specifies, "In the event of a loss to any property that may be covered by this policy, you must … produce receipts for any increased costs to maintain your standard of living while you reside elsewhere." *Id.* at PageID 574–75 (emphases omitted). This provision clearly shows that Allstate agreed to disperse ALE only after it received receipts evidencing an increase in living costs. *See Storey v. Williamson*, 101 So. 3d 662, 668 (Miss. Ct. App. 2012) ("The Court is 'bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous.") (quoting *Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002)).[13] Because the Court rejects the Stokes' argument that Allstate had a duty to prepay ALE,

[12] In reply to Allstate's argument that it had no duty to prepay ALE, the Stokes contend that "[t]he policy language does not state that expenses must be prepaid by the insured, and it does not prohibit advance payment of ALE benefits. Instead, the policy simply states that Allstate 'will pay the reasonable increase in living expenses.'" Doc. #52 at 3–4 (quoting Doc. #38-1 at PageID 572).

[13] Even if the intention underlying the receipt requirement was not completely clear, a reasonable person in the Stokes' position would understand the inclusion of a receipt requirement for increased costs of living to mean that the funds for those costs would be reimbursed, not prepaid. *See Omega Protein, Inc. v. Evanston Ins. Co.*, 336 So. 3d 128, 131

such cannot plausibly support a gross negligence claim against Allstate.

The Stokes further allege Allstate was grossly negligent by acting with reckless indifference in failing to communicate with them and by failing to ensure dispersed ALE benefitted them. These alleged facts are not enough to raise a right to relief above the speculative level because even when accepted as true, they do not demonstrate Allstate acted willfully, wantonly, or with reckless disregard of the consequences. Allowing leave to file the proposed gross negligence claim would be futile.

**C. Negligent Infliction of Emotional Distress**

"Under Mississippi law, a claim for negligent infliction of emotional distress requires allegations supporting a claim for general negligence in addition to allegations of 'some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.'" *Cirino v. Bank of Am., N.A.*, No. 1:14-cv-240, 2015 WL 5752105, at *7 (S.D. Miss. Aug. 26, 2015) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (Miss. 2001)).

As to Eugene, the proposed amended complaint alleges that "[he] presented to his family physician … with intermittent chest pain, anxiety, insomnia, anxious mental status, and abnormal affect, which he related to the handling of his insurance claim;" his cardiologist "stat[ed he] was 'under a lot of stress' associated with being displaced, living in a church without water/sanitation, and being told insurance would not cover other housing," "noted increased chest pain," and "opined the housing situation created tremendous stress imperiling [his] cardiovascular health;" "[he] received professional counseling … reporting severe stress from displacement and eviction

(Miss. 2022) ("When ambiguities are at play in an insurance contract, [courts] ask 'what a reasonable person in the insured's position would have understood the terms to mean.'") (quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998)).

due to hotel nonpayment, living in a church without adequate water/sanitation, panic attacks, headaches, insomnia, significant weight loss, and daily anxiety/depressive symptoms;" "[he] was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood and Chronic Post-Traumatic Stress Disorder, and these diagnoses were related by the counselor to the insurance handling of [the] housing claim;" "during the displacement period, [he] required wound care services … due to his 'broken infected left leg," "was advised by his wound care physician to stay-off his foot so as to not delay wound healing," and "[t]he eviction from the hotel …. necessitated [him] to have to use his feet to move;" and doctor's notes "document severe anxiety/depression, slowed wound healing due to stress and relocation, elevated blood sugar/blood pressure, and inability to maintain appropriate care conditions." Doc. #38-1 at PageID 522–23.

As to Jewel, the proposed amended complaint alleges that "[she] received counseling …, reporting severe distress from displacement, eviction, and living in a church without adequate water/sanitation, along with symptoms including depression, fear, daily anxiety, sleep disruption, low energy, poor concentration, psychomotor slowing, and thoughts that she would be better off dead more than half the days;" "[she] was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood and Chronic PTSD, and [her] counselor attributed causation and/or material exacerbation to stress and trauma associated with the handling of the housing claim;" and "[her] treating physician … documented anxiety/depressive disorder relating to the housing/insurance issues and referred her to [a] cardiologist for chest pain/heart complaints, with impressions including stress/anxiety/depression related to claim handling." *Id.* at PageID 523–24.

The proposed amended complaint further alleges that "[Allstate]'s claim notes dated February 19, 2024 and March 7, 2024 reflect [Allstate]'s awareness of these conditions (e.g., 'wife had 3 strokes/insured had wounds on legs');" and that the Stokes' mental and physical symptoms

"were the foreseeable result of [Allstate]'s mismanagement of housing stability and communications with medically vulnerable insureds, including eviction and displacement into unsanitary living conditions." Doc. #38-1 at PageID 518, 524.

Allstate argues that "the proposed amended complaint is futile to the extent it seeks to revive the negligent infliction of emotional distress claim" because "[t]hough the [Stokes'] proposed amended complaint includes more allegations about the [Stokes'] medical conditions, the new factual allegations do not contain specific factual support linking their conditions to [its] conduct;" "[i]t is clear that the [Stokes] had significant medical issues that preceded their claim under their homeowners policy with [it];" "[the Stokes] allege that these issues were exacerbated by their displacement from their home, but their displacement was not caused by [it];" "[displacement] was caused by the alleged damage to their home;" "[it] had no duty to furnish alternative housing under the ALE provision;" and "[t]he insurance policy required [it] to reimburse housing costs incurred by the [Stokes] under the conditions set forth in the policy." Doc. #47 at 8.

The Stokes reply that "[they] have plausibly alleged negligent infliction of emotional distress" because "Mississippi law permits recovery for negligent infliction of emotional distress where a defendant's negligence causes foreseeable mental or physical injury;"[14] "[t]he [proposed] Amended Complaint alleges documented medical diagnoses and treatment linked to the housing instability caused by [Allstate]'s conduct;" "[t]hese allegations plausibly state claims for emotional distress;" "[t]he [proposed] Amended Complaint plausibly alleges both forms of independent duty;" and "[Allstate] disputes [their] factual allegations[, but] [t]he Fifth Circuit has made clear that amendment cannot be deemed futile where the defendant's argument depends on disputed

[14] The Stokes do not cite any law to support this assertion. Doc. #52 at 14.

facts." Doc. #52 at 14–15.

Taking all the allegations as true, the proposed amended complaint fails to set forth a sufficient claim for negligent infliction of emotional distress. While it alleges that both Eugene and Jewel suffered physical and mental harm that was reasonably foreseeable to Allstate, Allstate had no duty to prepay ALE to ensure the Stokes had housing. Because the Stokes cannot plausibly claim Allstate had a duty to prepay ALE, they cannot plausibly claim the mental and physical symptoms they incurred from moving to a church due to a lack of ALE were caused by a breach of duty. Futility dictates the denial of leave to amend to assert the proposed negligent infliction of emotional distress claim.

**D. Intentional Infliction of Emotional Distress**

For an intentional infliction of emotional distress claim, a plaintiff must prove:

> (1) The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones "which evoke outrage or revulsion in civilized society"; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff "suffered severe emotional distress as a direct result of the acts of the defendant"; and (5) "such resulting emotional distress was foreseeable from the intentional acts of the defendant."

*Goode v. Walmart, Inc.*, 372 So. 3d 149, 163 (Miss. Ct. App. 2023) (quoting *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170 (Miss. Ct. App. 2021), *cert. denied*, 328 So. 3d 1253 (Miss. 2021)). "Mississippi's standard for a claim of intentional infliction of emotional distress is very high and focuses on the defendant's conduct and not the plaintiff's emotional condition." *Wilkerson v. Allred*, 407 So. 3d 218, 227 (Miss. Ct. App. 2024) (emphasis omitted) (quoting *Herbert v. Herbert*, 374 So. 3d 562, 571 (Miss. Ct. App. 2023)).

The proposed amended complaint alleges that "[Allstate] acted intentionally or, at minimum, with reckless disregard of the near certainty of severe emotional distress by engaging in extreme and outrageous conduct, including … telling medically vulnerable insureds they had

insufficient ALE to remain housed when [Allstate]'s own ledger showed substantial remaining coverage;" "failing to correct the misrepresentation or provide an accounting when confronted, while eviction was imminent;" "allowing eviction and displacement into a church without water/sanitation despite knowing of [the Stokes'] health conditions;" "charging/paying substantial ALE amounts for 'housing' not actually provided and failing to explain or reconcile those charges while [the Stokes] were unhoused;" and "repeatedly failing to respond to communications from [the Stokes], their agent, and the hotel during a foreseeable housing crisis." Doc. #38-1 at PageID 526–27. It further alleges that "[Allstate]'s conduct, in the context of [its] knowledge of [the Stokes'] vulnerabilities and the imminent eviction consequences, was so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized community." *Id.* at 527.

Allstate argues that "the [Stokes] failed to state a plausible claim of intentional infliction of emotional distress" because "[t]he [Stokes'] proposed amended complaint contains no … factual allegations" that describe conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community;" "[t]he new allegations dwell more on the *impact* of [its] alleged conduct rather than the *severity or character* of [its] alleged conduct;" and "the [Stokes'] proposed amended claim for intentional infliction of emotional distress rests largely on the allegations regarding ALE that [it] had no duty to furnish or prepay." Doc. #47 at 9 (quoting *King v. Newton Cnty Bd. of Supervisors*, 144 F. App'x 381, 385 (5th Cir. 2005) (per curiam)).

The Stokes reply that "[their] allegations as to Intentional Infliction of Emotional Distress satisfy the Rule 12 Standard" because "the proposed Amended Complaint alleges that [Allstate] … 'acted intentionally or, at minimum, with reckless disregard of the near certainty of severe

emotional distress by engaging in extreme and outrageous conduct;'" "[t]he proposed Amended Complaint further states … [Allstate]'s conduct … was so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized community;" "[Allstate] disputes [their] factual allegations" but "[s]uch issues cannot be resolved under Rule 12" since "[t]he Fifth Circuit has made clear that amendment cannot be deemed futile where the defendant's argument depends on disputed facts." Doc. #52 at 17–18.

Taking all the proposed amended complaint's allegations as true, the Stokes fail to state an intentional infliction of emotional distress claim because they fail to allege that Allstate's conduct was specifically intended to cause them harm. *See Murphy v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:21-cv-825, 2022 WL 2541281, at *2 (S.D. Miss. July 7, 2022) ("[A]n intentional-infliction-of-emotional-distress claim requires showing, among other elements, 'wilfull or wanton actions toward the plaintiff' that were 'directed at, or intended to cause harm to, the plaintiff.'") (quoting *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017)). And while the Stokes' health issues are unfortunate, they do not allege anything suggesting that Allstate's actions "go beyond all possible bounds of decency" or that its behavior is "utterly intolerable in a civilized community," especially since Allstate had no duty to prepay ALE. *Herbert*, 374 So. 3d at 571 (emphasis omitted) (quoting *Croft v. Grand Casino Tunica Inc.*, 910 So. 2d 66, 75 (Miss. Ct. App. 2005)). The proposed amended intentional infliction of emotional distress claim is futile.

**E. Bad Faith (Extracontractual)**

"In order to prevail in a bad faith claim against an insurer, the plaintiff must show that the insurer lacked an arguable or legitimate basis for denying the claim, or that the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Est. of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459, 464 (Miss. 2021) (quoting *Liberty*

*Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003)). "[T]o establish [a] claim[] for bad faith …, plaintiffs must prove 'more than bad judgment or negligence;' rather, 'bad faith' implies some *conscious* wrongdoing 'because of a dishonest purpose or moral obliquity.'" *Murphy*, 2022 WL 2541281, at *2 (internal quotation marks omitted) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (Miss. 2004)).

As to the investigation of the Stokes' property damage, the proposed amended complaint alleges that "[Allstate] had a duty to perform a prompt and adequate investigation and to make a reasonable, good-faith claims decisions;" "[Allstate] delayed completion of a dwelling scope/estimate for approximately 113 days after notice;"[15] and "[d]uring this delay, [Allstate] did not provide timely, adequate funds and approvals to commence repairs." Doc. #38-1 at PageID 521, 527. As to the dispersement of ALE, the proposed amended complaint alleges that "[Allstate] lacked an arguable or legitimate basis and/or committed a willful or malicious wrong or acted with gross and reckless disregard for [the Stokes'] rights, including by … misrepresenting remaining ALE … in a way contradicted by its own payment ledger;" "failing to provide the requested ALE accounting to correct the misrepresentation;" "allowing lockouts and eviction due to nonpayment while substantial ALE remained;" "delaying dwelling estimating/adjusting in a manner that prolonged displacement and increased ALE erosion;" "failing to provide stable housing accommodations despite knowledge of [the Stokes'] health conditions and need for sanitary conditions;" and "making or allowing post-eviction ALE disbursements for purported housing costs without ensuring [the Stokes] received the benefit, and without timely disclosure or

[15] Specifically, the proposed amended complaint alleges that "[Allstate] first contacted BrightClaim LLC on April 23, 2024 to provide an estimate;" "BrightClaim completed an estimate on April 29, 2024;" "[Allstate] then waited nearly 30 more days and caused an inspection by its adjuster … on May 20, 2024;" "[the adjuster]'s estimate was not completed until July 8, 2024—after [the Stokes'] hotel eviction;" and "a supplemental estimate was not completed by [Allstate]'s adjuster until August 16, 2024." Doc. #38-1 at PageID 521.

correction." *Id.* at PageID 527–28.

Allstate argues that "the proposed amended complaint does not state a claim for bad faith upon which relief can be granted and the proposed amendment is therefore futile" because "[t]he proposed amended complaint would allege in a conclusory manner that '[it] lacked an arguable or legitimate basis and/or committed a willful or malicious wrong or acted with gross and reckless disregard for [the Stokes'] rights' and then gives six examples, all related to ALE issues;" "these conclusory allegations about ALEs are based on the incorrect premise that [it] had a duty to furnish housing or prepay living expenses under the ALE provision of the policy" and "are … immaterial to a bad faith claim since [it] had no contractual duty to furnish housing or prepay housing costs under the policy;" and "the [Stokes'] proposed amended complaint does not mention an alleged reason [it] denied paying more or why the amounts paid constituted bad faith." Doc. #47 at 9–10 (quoting Doc. #38-1 at PageID 527). Allstate does not address the proposed amended complaint's allegations regarding the delay of claim investigation.

The Stokes reply that "[t]he proposed amended complaint makes bad faith allegations;" "[a]ccepting those allegations as true – as Rule 12 requires – [they] have plausibly alleged Bad Faith;" "the Fifth Circuit [has] explained that an insurer may be liable for bad faith when it … fails to properly investigate a claim," "relies on inadequate claim investigation," or "handles the claim unreasonably;" and the Fifth Circuit has "emphasized that claim-handling conduct – not merely policy interpretation – can support bad-faith liability." Doc. #52 at 18, 19 (citing *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618 (5th Cir. 2008)).

As to the proposed allegations that Allstate delayed the claim investigation, the Fifth Circuit has recognized that though it "[is] skeptical of such claims," Mississippi courts "have permitted claimants to recover damages on bad faith claims when resolution of an insurance claim

is merely delayed rather than ultimately denied." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (collecting cases). However, "[n]ot all delays in the payment of claims are actionable." *Pilate v. Am. Federated Ins. Co.*, 865 So. 2d 387, 394 (Miss. Ct. App. 2004).

> Obviously, some delay in evaluating claims is inevitable, legitimate and socially useful. Insurers are entitled, and in fact legally obligated, to investigate fully the legitimacy of claims, and some skepticism in evaluating claims is appropriate. Since an insurer has an obligation under Mississippi law to investigate claims, discharging that duty is not bad faith.

*Id.* (quoting JEFFREY JACKSON, MISSISSIPPI INSURANCE LAW § 12:5 (2001)).

Here, the Stokes' proposed amended complaint alleges that Allstate delayed the claim investigation for approximately 113 days after notice[16] without an arguable or legitimate basis and/or committed a willful or malicious wrong when causing the delay. Such is not sufficient to support a claim of bad faith. *See Berry v. Hardwick*, 152 F. App'x 371 (5th Cir. 2005) (per curiam) (allegations of eleven-month delay did not sufficiently show insurance adjuster acted with malice); *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004) (ten-month delay in payment of insurance benefits is "at the most, negligent"). Further, the Stokes do not (and cannot) allege that Allstate's conduct violated any deadline imposed by the policy.[17] *See Travelers Indem. Co. v. Weatherbee*, 368 So. 2d 829, 834–35 (Miss. 1979) (intentional withholding of coverage constituted independent tort when insurance company ignored payment deadline in policy); *see also Children's Imagination Station v. Prime Ins. Syndicate, Inc.*, No. 1:07CV1000, 2008 WL

---

[16] Based on the allegations in the proposed amended complaint that the Stokes reported their loss to Allstate on February 18, 2024, Doc. #38-1 at PageID 518, and that Allstate's adjuster completed his first estimate on July 8, 2024, *id.* at PageID 521, it appears the time between notice and the initial inspection was 141 days, approximately four months and twenty days.

[17] The only relevant deadlines in the policy include that Allstate must notify the Stokes of the options it intends to utilize within thirty days after the Stokes provide it with a signed, sworn proof of loss, and that Allstate must settle within sixty days after the amount of loss is finally determined. Doc. #38-1 at PageID 575, 577. The proposed amended complaint does not specify whether the Stokes provided Allstate with a signed, sworn proof of loss or whether the amount of loss was finally determined.

11344683, at *7 (S.D. Miss. Dec. 19, 2008) (insurer's conduct did not rise to level of independent tort of bad faith because, among other things, "[insurer]'s conduct did not violate any payment deadlines set forth in the policy."). And while the proposed amended complaint does allege that Allstate delayed the investigation without an arguable or legitimate basis, such allegation is conclusory as the proposed amended complaint fails to include any credible material facts showing that Allstate did not have a reasonable or arguable reason for the delay. *See Liberty Ins. Corp. v. Tutor*, 309 So. 3d 493, 507–08 (Miss. Ct. App. 2019) ("The claimant bears the burden of demonstrating that the insurer had no arguable reason for denying the claim.") (citing *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1097 (Miss. 1996)).

As to the allegations regarding the dispersement of ALE, the Stokes allege that Allstate committed a willful or malicious wrong when it misrepresented the amount of remaining ALE, allowed lockouts when ALE remained available, and dispersed ALE without ensuring that the Stokes benefited. Such is insufficient to state a plausible claim of bad faith since, as discussed, the Stokes did not rely on Allstate's ALE misrepresentation, and Allstate had no duty to prepay ALE.

In short, because the proposed amended complaint fails to sufficiently state a bad faith claim, the proposed amended bad faith claim would be futile.

**F. Punitive Damages**

If an insurer does not "'perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation' … [it] may be liable for punitive damages for denying a claim in bad faith."[18] *Broussard*, 523 F.3d at 627–28 (quoting *Liberty Mut.*

[18] Though similar, the Court considers different standards for the bad faith claim and the claim for punitive damages because while recovery of punitive damages is rooted in a claim for bad faith, not all cognizable bad faith claims warrant punitive damages. While a plaintiff is not required to prove malice for an award of certain extra-contractual damages, a plaintiff is required to prove malice in order to recover punitive damages. *See Mitchell v. State Farm Fire*

*Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). The proposed amended complaint alleges that "[Allstate]'s conduct, as alleged, constitutes actual malice and/or gross negligence evidencing willful, wanton, or reckless disregard for the safety and rights of [the Stokes], thereby justifying damages under Mississippi law." Doc. #38-1 at PageID 528.

Allstate argues that "[s]ince the [Stokes'] proposed amended complaint would not plead any plausible claim for relief other than simple breach of contract, it does not state a plausible basis for an award of punitive damages;" and "[l]ooking at the factual allegations in the [Stokes'] proposed amended complaint, this is a breach of contract case" and "is not a case where punitive damages could be awarded." Doc. #47 at 10–11.

The Stokes reply that "[t]he proposed Amended Complaint['s] allege[d] facts supporting the claim for bad faith also support[] the claim for punitive damage[s];" "[t]he proposed Amended Complaint alleges [that] [Allstate] had a duty to perform a prompt and adequate investigation and to make reasonable, good-faith claims decisions," and "[Allstate] lacked an arguable or legitimate basis and/or committed a willful or malicious wrong or acted with gross and reckless disregard for [their] rights;" and "[a]ccepting those allegations as true – as Rule 12 requires – [they] have plausibly [alleged a] punitive damage claim." Doc. #52 at 19, 20.

Because all the proposed amended extracontractual claims fail, the Court must consider whether punitive damages could be awarded based on the Stokes' remaining breach of contract claim. Though "punitive damages … are generally not available for breach of contract," *Barnes*

*& Cas. Co.*, 954 F.3d 700, 708 (5th Cir. 2020) ("To win a claim for punitive damages, the plaintiff must establish that: '1. The insurer lacked an arguable or legitimate basis for denying the claim, *and* 2. The insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.'") (quoting *State Farm Mut. Auto Ins. Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998)); *Tutor*, 309 So. 3d at 507 ("[T]he plaintiff/claimant bears the burden of proving that the insurer *either* lacked a legitimate or arguable basis for denying his claim *or* that it committed a willful or malicious wrong or acted with gross and reckless disregard for his rights" and "[w]hen an insurer denies a claim without an arguable basis, but the jury does not award punitive damages, extra-contractual damages may provide an immediate form of relief.") (emphases added).

*v. Gorman*, 536 U.S. 181, 187–88 (2002), punitive damages may be awarded if the plaintiff "prove[s] that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard for the plaintiff's rights," *T.C.B. Const. Co. v. W.C. Fore Trucking, Inc.*, 134 So. 3d 701, 704 (Miss. 2013) (quoting *Pursue Energy Corp. v. Abernathy*, 77 So. 3d 1094, 1101 (Miss. 2011)); *accord* MISS. CODE ANN § 11-1-65. For the reasons previously discussed, the proposed amended complaint fails to sufficiently allege that Allstate intentionally wronged the Stokes or acted maliciously or with reckless disregard for the Stokes' rights. Allowing leave to amend the proposed punitive damages claim would be futile.

## IV
## Conclusion

Because allowing the Stokes to file their proposed amended complaint would be futile, the Stokes' motion for leave to amend [38] is **DENIED**.

**SO ORDERED**, this 1st day of September, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**